UNITED STATES of America

v.

Michael O'BRIEN.

UNITED STATES of America

v.

Victor PARENTE.

UNITED STATES of America

v.

Albert CANU.

UNITED STATES of America

v.

Vincent FERRIGNO.

UNITED STATES of America

v.

Jack CULTRERA.

UNITED STATES of America

v.

Richard JEAN.

Crim. Nos. H–76–59, H–76–61, H–76–65, H–76–67, H–76–69, and H–76–71.

United States District Court,
D. Connecticut.

Sept. 29, 1976.

Paul E. Coffey, Sp. Atty., Strike Force on Organized Crime, Hartford, Conn., for plaintiff.

William J. Dolan and Joseph E. Fazzano, Hartford, Conn., for O'Brien and Cultrera.

S. V. Faulise, Hartford, Conn., for Parente.

Ronald Cassidento, West Hartford, Conn., for Canu.

Thomas D. Clifford, Shipman & Goodwin, Hartford, Conn., for Ferrigno.

Richard S. Cramer, Federal Public Defender, Hartford, Conn., for Jean.

### RULING ON MOTIONS TO DISMISS

BLUMENFELD, District Judge.

The defendant in each of the above cases has moved to dismiss an information alleging violations of the provisions of the Internal Revenue Code dealing with wagering taxes, 26 U.S.C. § 4401 *et seq.*[1] The basis of each motion is that the statutory requirements compel the disclosure of incriminating information in violation of the fifth amendment privilege against self-incrimination.

In 1968 in *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, the Supreme Court held that the fifth amendment privilege against self-incrimination barred prosecutions for violations of the wagering tax statutes. The Court concluded that the methods employed by Congress to tax wagerers created " 'real and appreciable,' and not merely 'imaginary and unsubstantial,' hazards of self-incrimination." *Marchetti v. United States, supra* at 48, 88 S.Ct. at 702.

The crux of the fifth amendment difficulty in the wagering tax scheme at the time of *Marchetti* and *Grosso* was the ready availability to state and federal authorities of incriminating information obtained as a consequence of those laws. *Marchetti v. United States, supra* at 47–49, 88 S.Ct. 697; *Grosso v. United States, supra* at 65–67, 88 S.Ct. 709. In an effort to effect a solution in this problem area, Congress has made several changes in the wagering tax laws since 1968. The question raised by the present motions is whether these statutory changes are sufficient to meet the fifth amendment objections found in *Marchetti* and *Grosso.*

### I.

In 1968 Congress repealed the provisions of 26 U.S.C. § 6806(c) which required wagering tax registrants (26 U.S.C. § 4412) to post the internal revenue occupational tax stamp (26 U.S.C. § 4411) "conspicuously" in their principal places of business, or to keep the stamp on their persons. Act of Oct. 22, 1968, Pub.L. No. 90–618, Title II, § 204, 82 Stat. 1235. In addition, Congress repealed provisions of the former 26 U.S.C. § 6107, requiring each principal internal revenue office to maintain for public inspection a listing of all who paid the special occupational wagering tax and to provide certified copies of the listing upon request to any state or local prosecuting officer. Act of Oct. 22, 1968, Pub.L. No. 90–618, Title II, § 203(a), 82 Stat. 1235.

In 1974, Congress, in a further effort to meet the *Marchetti* and *Grosso* objections, added 26 U.S.C. § 4424 to the tax code. This provision limits the disclosure by the Treasury Department of wagering tax information.[2]

---

1. Each of the defendants is charged with one or more of the following violations of the wagering tax laws—failure to register with the District Director of the Internal Revenue Service, 26 U.S.C. § 4412 (1954); failure to pay the $500 special occupational tax which is assessed annually, 26 U.S.C. § 4411 (1974); failure to pay the 2% excise tax, 26 U.S.C. § 4401 (1974).

2. 26 U.S.C. § 4424 provides:
 "(a) *General rule.*—Except as otherwise provided in this section, neither the Secretary or his delegate nor any other officer or employee of the Treasury Department may divulge or make known in any manner whatever to any person—
 (1) any original, copy, or abstract of any return, payment, or registration made pursuant to this chapter,
 (2) any record required for making any such return, payment, or registration, which the Secretary or his delegate is permitted by the taxpayer to examine or which is produced pursuant to section 7602, or
 (3) any information come at by the exploitation of any such return, payment, registration, or record.
 "(b) *Permissible disclosure.*—A disclosure otherwise prohibited by subsection (a) may be made in connection with the administration or civil or criminal enforcement of any tax imposed by this title. However, any document or information so disclosed may not be—
 (1) divulged or made known in any manner whatever by any officer or employee of the United States to any person except in con-

Despite these significant statutory changes, the defendants argue that the wagering tax laws are still in violation of the fifth amendment privilege against self-incrimination. They contend that the registration requirements, 26 U.S.C. § 4412, the filing requirements, 26 U.S.C. § 6011, the daily record-keeping requirements, 26 U.S.C. § 4403, and the very payment of the wagering taxes themselves compel the disclosure of incriminating information. Furthermore, they argue that the limitations on the disclosure of this information contained in § 4424 are inadequate to protect their fifth amendment rights.

In *Marchetti* the Supreme Court made it clear that "the unlawfulness of an activity does not prevent its taxation." *Marchetti v. United States, supra* at 44, 88 S.Ct. at 700. Thus, there is no constitutional prohibition of the wagering taxes themselves. There is also no doubt that the information obtained by the Treasury Department in the collection of the wagering taxes may prove to be incriminating.[3] Therefore, the critical question is whether the limitations on disclosure in § 4424 are sufficient to prevent the defendants from being "confronted by substantial and 'real,' . . . hazards of incrimination." *Marchetti v. United States, supra* at 53, 88 S.Ct. at 705.

Section 4424(a) establishes a general prohibition of the disclosure by the Treasury Department of wagering tax information. Subsection (c) prohibits the use in any criminal proceeding, other than in connection with the enforcement of the tax code, of wagering tax documents in the possession of the taxpayer. However, subsection (b) permits the disclosure of information in connection with the administrative or civil or criminal enforcement of the tax code and subsection (d) allows certain information to be disclosed to Congressional committees. The thrust of the defendants' argument is that these two provisions permitting disclosure render inadequate the protection afforded by the statute.

 While recognizing that only immunity from the use of wagering tax information in subsequent criminal prosecutions for gambling would afford defendants complete protection,[4] I conclude that the present statutory scheme is adequate to prevent a "substantial and real hazard of incrimination." The defendants have presented no evidence of the wagering tax information being used in criminal prosecutions for illegal gambling since 1974. Furthermore, the conceivable ways in which the information could become available[5]

nection with the administration or civil or criminal enforcement of this title, nor

(2) used, directly or indirectly, in any criminal prosecution for any offense occurring before the date of enactment of this section.

"(c) *Use of documents possessed by taxpayer.*—Except in connection with the administration or civil or criminal enforcement of any tax imposed by this title—

(1) any stamp denoting payment of the special tax under this chapter,

(2) any original, copy, or abstract possessed by a taxpayer of any return, payment, or registration made by such taxpayer pursuant to this chapter, and

(3) any information come at by the exploitation of any such document,

shall not be used against such taxpayer in any criminal proceeding.

"(d) *Inspection by Committees of Congress.*—Section 6103(d) shall apply with respect to any return, payment, or registration made pursuant to this chapter."

**3.** In *Marchetti v. United States,* 390 U.S. 39, 47, 88 S.Ct. 697, 702, 19 L.Ed.2d 889 (1968) the

Supreme Court recognized that "those engaged in wagering are a group 'inherently suspect of criminal activities.'" This remains true today as gambling is still largely an illegal activity. *See, e. g.,* 55 Conn.Gen.Stat. § 273–78.

**4.** 26 U.S.C. § 4424(b)(2) does provide this type of use immunity for criminal prosecutions for offenses occurring before 1974. However, no such immunity is provided for offenses allegedly committed after 1974.

**5.** The defendants suggest several ways in which the information could hypothetically become available to prosecuting authorities. First, the Justice Department may receive the information pursuant to a *bona fide* investigation for violations of the tax code. Secondly, the information could be disclosed by a Congressional committee that received it pursuant to 4424(d). Finally, the information would become public if the defendant was involved in administrative, civil or criminal proceedings enforcing the tax code.

are sufficiently remote to persuade me that § 4424 provides adequate protection for purposes of the fifth amendment.[6]

For the foregoing reasons, the defendant's Motion to Dismiss in each of the above cases is denied.

SO ORDERED.

---

6. My conclusion is buttressed by a recent suggestion of the Supreme Court that the filing of a completed gambling tax return (and presumably the payment of the taxes themselves) does not necessarily foreclose a fifth amendment claim against the use of the information in a subsequent criminal prosecution for illegal gambling.

In *Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), the Supreme Court held that the filing of an income tax return, without claiming the privilege against self-incrimination, prevents a later claim that the information was "compelled" for fifth amendment purposes. However, in a footnote, the Court left open the possibility that the privilege may not be lost by the filing of a completed gambling tax return.

"*Marchetti* and *Grosso,* of course, removed the threat of a criminal conviction when one *validly* claims the privilege by failing to file gambling tax returns. *We do not pause here to consider whether there may be circumstances that would deprive a gambler of the free choice to claim the privilege by failing to file such returns, and therefore allow him to exclude a completed gambling tax return by claiming the privilege at trial.*" 424 U.S. at 660 n. 14, 96 S.Ct. at 1185 (emphasis added).

The implication to be drawn from this note is that if a defendant may not validly claim his fifth amendment privilege by failing to file and pay the wagering taxes, as I hold here, he will have no "free choice" with respect to providing the required information. Thus, a defendant should be able to claim his fifth amendment privilege against this "compelled" information should it prove relevant to any subsequent criminal trial for illegal gambling, an offense distinct from those arising from the failure to comply with the wagering tax laws. At that time the hazard of incrimination would, of course, have become "real and substantial." Furthermore, because the disclosure limitations of § 4424 are essential to the constitutional validity of the statutory scheme, a defendant could always move to suppress evidence that had been made available to prosecuting authorities in violation of § 4424.