**UNITED STATES of America, Plaintiff,**

v.

**Joseph D. SPICA, Defendant.**

**No. 80–8CR(2).**

United States District Court,
E. D. Missouri, E. D.

Feb. 20, 1980.

Kevin F. O'Malley, Asst. U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for plaintiff.

Daniel V. O'Brien, St. Louis, Mo., for defendant.

## MEMORANDUM AND ORDER

NANGLE, District Judge.

This case is now before the Court on defendant's motion to dismiss the indictment. The present indictment is in six counts. Three counts charge that defendant has violated 26 U.S.C. § 7203 in that he failed to register his gambling activities with the Internal Revenue Service as required by 26 U.S.C. § 4412. The remaining three counts charge that defendant violated 26 U.S.C. § 7203 in that he failed to pay the occupational tax required by 26 U.S.C. § 4411 due to his gambling activities.

The Supreme Court ruled in 1968 that 26 U.S.C. §§ 4411 and 4412 were unconstitutional as a violation of defendant's Fifth Amendment, privilege against self-incrimination. *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). Subsequent to those holdings, however, Congress amended the relevant statutes in an attempt to cure the constitutional deficiencies.

The Supreme Court has made clear that the unlawfulness of an activity does not prevent its taxation. *Marchetti, supra*, 390 U.S. at 44, 88 S.Ct. at 700. The issue at present, therefore, is whether the present statutory scheme sufficiently protects the taxpayer's Fifth Amendment privilege against self-incrimination.

In *Marchetti*, the Court was urged to save the statute by implying a use immunity for the information supplied by the taxpayer. The Court declined to do so, stating that such a decision was more properly left to the legislative branch. *Marchetti, supra*, at 58–60, 88 S.Ct. at 707–709. Congress has subsequently addressed the specific problems raised by the Supreme Court.

That Court found numerous problems with the statutory scheme as it existed in 1968. First of all, 26 U.S.C. § 6107 required the internal revenue service to provide a listing of those who paid the occupational tax pursuant to 26 U.S.C. § 4411 to prosecuting authorities. That section has been repealed. Also subsequently repealed was the former requirement of 26 U.S.C. § 6806(c) that payers of the occupational tax either post the revenue stamp conspicuously in their principal place of business or keep the stamp on their persons, subject to production upon demand by Treasury officials.

The Court was also concerned that possession of a federal wagering tax stamp, or payment of the tax, was often admitted in state or federal prosecutions, or led to discovery of evidence admitted in such prosecutions. Congress dealt with this problem through the enactment of 26 U.S.C. § 4424. First of all, that section prohibits the disclosure of the information supplied by the taxpayer or any information derived from that information by Treasury officials. Violation of that prohibition can lead to fines, imprisonment and loss of employment pursuant to 18 U.S.C. § 1905.

Furthermore, that section prohibits the utilization in any criminal proceeding of any documents or stamps held by the taxpayer in relation to these taxes or any information derived from such documents or stamps. The only exceptions to this exclusionary rule are proceedings to criminally or civilly enforce these tax laws, or disclosures to Congressional committees.

This Court must conclude that these protections adequately protect the defendant's Fifth Amendment interests. Any information relevant to these taxes obtained from the taxpayer is excluded from criminal proceedings. Any information supplied to the Internal Revenue Service is prohibited from disclosure. Obviously, the fact that incriminating information may be disclosed in the course of a civil or criminal proceeding to enforce the wagering tax laws does not raise Fifth Amendment problems, since the taxpayer can ensure no such disclosures by fully complying with those laws.

There is, of course, the possibility that Treasury employees will illegally disclose the information supplied. Such a possibility, however, does not appear to give rise to real and appreciable dangers of self-incrimination. First of all, such information and

evidence derived from it would likely be inadmissible in subsequent prosecutions due to its illegal source. *United States v. Stavros*, 597 F.2d 108 (7th Cir. 1978); cf. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In any event, such a possibility is speculative at best, not deserving of Fifth Amendment protection. *See United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971) (administrative regulation prohibiting disclosure of potentially incriminating information sufficient to protect Fifth Amendment interests).

This Court must likewise conclude that the possible disclosure to Congressional committees pursuant to 26 U.S.C. § 4424(d) does not raise substantial dangers of self-incrimination. This Court must therefore agree with the other courts which have dealt with this issue, *United States v. Sahadi*, 555 F.2d 23 (2d Cir. 1977); *Stavros, supra* ; *United States v. O'Brien*, 420 F.Supp. 834 (D.Conn.1976), aff'd 555 F.2d 136 (2d Cir. 1977), and hold that the present statutory scheme sufficiently protects the defendant's Fifth Amendment concerns. Therefore,

IT IS HEREBY ORDERED that defendant's motion to dismiss be and is denied.