**UNITED STATES of America**

v.

**John M. HAYDEL, Jr., et al.**

**Crim. A. No. 79–46–A.**

United States District Court,
M. D. Louisiana.

Feb. 27, 1980.

C. Michael Hill, Asst. U. S. Atty., Baton Rouge, La., for plaintiff.

Virgil M. Wheeler, Jr., New Orleans, La., for defendants.

## OPINION ON MOTION TO SUPPRESS EVIDENCE

JOHN V. PARKER, Chief Judge.

Defendant Haydel and others are charged in a multi-count indictment with conspiracy to operate an illegal gambling business (Count I, 18 U.S.C. § 371) and operation of such an illegal gambling business (Count II, 18 U.S.C. § 1955), and Haydel singly is charged with nine counts (III through XI) of filing false wagering tax returns (26 U.S.C. § 7206[1]). Haydel has filed motions to suppress certain evidence upon which the U. S. Magistrate has held an extensive evidentiary hearing and has rendered his Report and Recommendation. On January 23, 1980, the Court entered its minute entry adopting the Magistrate's Report in part and maintaining the motion to suppress in part. This opinion explains that ruling.

In the nearly 200 years since the first ten Amendments of the Constitution were ratified, one would suppose that every question which could be advanced under the compulsory self-incrimination provisions of the Fifth Amendment had long since been raised and decided. We find that this is not so.

This case brings into sharp focus the conflict between society's need for effective law enforcement and the privilege against compelled incrimination protected by the Fifth Amendment. The issue here presented is whether the government can, under a revenue scheme, require an inherently suspect group (gamblers) to prepare and maintain detailed records of their gambling activities, then seize those records under a search warrant and use them to convict the gamblers of conspiracy to commit illegal gambling and commission of illegal gambling.

The records here involved were seized by the Federal Bureau of Investigation under several search warrants executed in different locations and upon the persons of several different people in Baton Rouge, Louisiana. The primary prize among the many seized documents and records is a box found under the bed in a bedroom at the residence of Haydel's father. The box contains numerous betting slips showing the individual wagers of numerous individuals. The government does not dispute that these records were prepared for and used in Haydel's bookmaking operations in Baton Rouge. Haydel has registered with the Internal Revenue Service and paid the special occupational license tax assessed by 26 U.S.C. § 4411, and he regularly files wagering tax returns required by 26 U.S.C. § 4401. From the evidentiary hearing held before the Magistrate it is clear that the records in this box, in particular, are those required to be maintained by registered gamblers under the provisions of 26 U.S.C. § 4403 and the regulations promulgated thereunder which require gamblers to maintain records showing daily gross wagers. The government, using these records, has computed daily, weekly and monthly gross wagers taken in by Haydel's bookmaking operation.

Having seized these wagering tax records, the government now proposes to offer them in evidence to prove that Haydel conspired to and conducted illegal gambling activities in violation of 18 U.S.C. §§ 371 and 1955.

The tax laws (26 U.S.C. § 4424) prohibit use of any tax return or gambling stamp in such a prosecution, but the government correctly argues that the tax laws do not *per se* forbid the use of records such as these which were independently discovered by the F.B.I. without assistance from the Internal Revenue Service.[1] Thus, the issue presented is purely constitutional: Does the self-incrimination privilege of the Fifth Amendment allow the government to·compel the bookmaker to prepare and maintain records

1. It should be noted that these records are not those restricted by the provisions of 26 U.S.C. § 4424(b) prohibiting use in any criminal prosecution except enforcement of the wagering tax law. These records are raw data from which the returns required by the wagering tax law can be prepared.

showing his gross wagers under penalty of prosecution for failure to maintain them and then use the wagering records to convict him of illegal gambling?

The government argues that there is no Fifth Amendment compulsion here because Haydel was not compelled to disclose the existence or location of the records—they were discovered by F.B.I. surveillance and investigation—and that the government will require no assistance from Haydel in verification or identification of the documents or in connecting them to Haydel. In my opinion, the government misapprehends the reach of the Fifth Amendment's protection against compulsory incrimination. The compulsion here occurs, not with the location or verification of the records, but in their creation and maintenance in the first place.

These records are clearly compelled by the government under its statutory revenue scheme, and they are records of criminal activity;[2] and when these documents are used in the prosecution of non-tax related crimes, they constitute compelled incrimination which is prohibited by the Fifth Amendment of our Constitution under the jurisprudence construing Congressional taxation of illegal activities such as gambling.

Gambling is an inherently illegal activity. The Supreme Court pointed out in *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 700, 19 L.Ed.2d 889 (1968), that there are many federal and state laws so providing. That situation has not changed since 1968; gamblers are still an inherently suspect group. The Congress has, however, taxed illegal activities for many years, and the jurisprudence has regularly sustained its power to do so. *License Tax Cases*, 5 Wall. 462, 18 L.Ed. 497 (1867), *United States v. Sullivan*, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927); *Garner v. United States*, 424

U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976); *Marchetti, supra; Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

The first Congressional isolation of gambling activities for taxation was contained in the Revenue Act of 1951 (26 U.S.C. § 3285, et seq.) which levied an occupational license tax on persons engaged in the business of accepting wagers. The statute required registration with the Internal Revenue Service (the famous gambling stamp) and required filing of monthly excise tax returns. These provisions were challenged twice in the Supreme Court, but initially both gamblers lost. In *United States v. Kahriger*, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and *Lewis v. United States*, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), the Supreme Court sustained the statutory revenue scheme against Fifth Amendment claims, holding that the privilege extended only to past conduct not to acts that may or may not be committed in the future. The Court further held that registration as a gambler did not admit past illegal activities, that it only placed one in position to engage in the wagering business in the future. The Court reasoned that gamblers who continued in business exercised their "free choice" and had no constitutional complaint that registration and filing gambling tax returns compelled incrimination:

> "If petitioner desires to engage in an unlawful business, he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment. . . . The only compulsion under the Act is that requiring the decision which would-be gamblers must make at

---

**2.** The government argues that the activity is not necessarily criminal under federal law because the bookmaker can keep his operation small (fewer than five persons) and short lived (not in excess of thirty days operation or gross revenue of $2,000 in a single day) and thus avoid running afoul of 18 U.S.C. § 1955. The government argues that the gambler then

makes a "free choice" when he elects to continue gambling on a larger scale. I find this argument unpersuasive. Those engaged in gambling are a group "inherently suspect of criminal activities." (*Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 702, 19 L.Ed.2d 889 [1968]).

the threshold. They may have to give up gambling, but there is no constitutional right to gamble. . . ." (*Lewis v. United States*, 75 S.Ct. at 417–418).

In neither *Kahriger* nor *Lewis* did the Court discuss the record-keeping requirement or the disclosure provisions which were considered later. In *Marchetti v. United States, supra,* and *Grosso v. United States, supra,* the Supreme Court expanded the Fifth Amendment so as to shield gamblers from prosecution for failure to register and failure to file wagering tax returns, because the very act of compliance with the wagering tax laws compelled them to admit to criminal activities. The future-conduct-only reasoning of the *Kahriger* and *Lewis* cases was specifically overruled, and the Court substituted the test of "substantial and 'real', and not merely trifling or imaginary, hazards of incrimination," specifically noting that " . . . it is not mere time to which the law must look, but the substantiality of the risks of incrimination." (*Marchetti, supra,* 88 S.Ct. at 705–706).

The Supreme Court also pointed out that gamblers are an inherently suspect group whose activities are almost uniformly unlawful, and the Court carefully reviewed the provisions of the wagering tax laws which required that Internal Revenue Service agents turn over information obtained from registration and filing tax returns to state and federal prosecutors for use in prosecution of gambling activities. These provisions, the Court concluded, constituted "real and appreciable" hazards of self-incrimination and thus gamblers who pleaded the privilege could not be prosecuted for failure to register or pay the excise tax. (*Marchetti, supra,* at 702) In overruling *Kahriger* and *Lewis,* the Court stated that the question was not whether one has the "constitutional right to gamble" in violation of the law, but whether, having done so, he may be compelled to give evidence against himself, specifically noting that the privilege "was intended to shield the guilty and imprudent as well as the innocent and foresighted." (*Marchetti, supra,* at 704). The Court thus rejected the "free choice" reasoning of *Kahriger* and *Lewis* which recognized an implied waiver of the privilege by voluntarily engaging in the unlawful activity:

" . . . To give credence to such 'waivers' without the most deliberate examination of the circumstances surrounding them would ultimately license widespread erosion of the privilege through 'ingenuously drawn legislation'. . . . We cannot agree that the constitutional privilege is meaningfully waived merely because those 'inherently suspect of criminal activities' have been commanded either to cease wagering or to provide information incriminating to themselves, and have ultimately elected to do neither." (*Marchetti, supra,* at 704).

The Supreme Court distinguished *United States v. Sullivan*, supra, which held that income from illicit bootlegging activities is subject to the income tax and further held that the bootlegger could not refuse to file a tax return on the ground that a substantial part of his income was from illegal activities. Mr. Justice Holmes, in *Sullivan,* implied that the bootlegger could have claimed the privilege of the Fifth Amendment on the income tax return as to information which would incriminate him and further held that having failed to do so he could not raise the privilege at the point of prosecution.

In *Marchetti,* the Court also distinguished *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), which involved prosecutorial use of records that the defendant (a wholesaler) was obliged to keep under the Price Control Act and regulations during World War II. There, the Court articulated the "required records" doctrine which involves three principal elements: (1) the required records are those customarily maintained by businesses; (2) there is a certain "public aspect" to the records; and (3) the requirement is imposed in an essentially non-criminal and regulatory area. Clearly, *Shapiro* was not controlling as to the targeted group involved in *Marchetti* upon whom the record-keeping requirement was imposed.

Having concluded that no prosecution could be maintained under the wagering tax law where the privilege was pleaded, the Supreme Court declined to declare the laws unconstitutional in *Marchetti* and *Grosso.*

■ Thereafter, in 1968, the Congress repealed the public posting requirement concerning the gambling stamps and also repealed the provisions requiring Internal Revenue Service agents to maintain lists of registered gamblers for public inspection and to turn over information regarding tax returns to state and federal prosecutors. In 1974, the Congress enacted 26 U.S.C. § 4424 which limits disclosure by the Treasury Department of wagering tax information. That section [3] prohibits disclosures of the gambling registration, any gambling tax returns, and any record required for making any such return, and any information "come at by the exploitation of any such return, payment, registration, or record." As noted earlier, the records here involved are those required for making wagering tax returns and no disclosure was made by any Treasury Department agent; the F.B.I. found them independently. Section 4424 also specifically prohibits prosecutorial use of any stamp, return and "any information

come at by the exploitation of any such document" except in civil or criminal enforcement of the wagering tax law. Significantly, part (b) of that section does not prohibit use in other criminal proceedings of "records required for making returns," although the (a) part does prohibit disclosure; hence, as noted earlier, these records are not covered by the statute.

In *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971), the Court considered the case of another gambler. He was tried, convicted, sentenced and lost his appeal prior to January 29, 1968, the day the decisions in *Marchetti* and *Grosso* were handed down. Mackey was convicted of evasion of income taxes and his gambling tax returns were introduced in evidence against him at his trial. Subsequent to conviction, he petitioned for habeas corpus, urging the same Fifth Amendment arguments as *Marchetti* and *Grosso.* The Court declined to apply *Marchetti* and *Grosso* retroactively, treating these cases as though they created a new and expanded Fifth Amendment right effective January 29, 1968. In *Mackey,* however, the Court made the following statement which is significant for our purposes:

3. "§ 4424. Disclosure of wagering tax information

"(a) General rule.—Except as otherwise provided in this section, neither the Secretary nor any other officer or employee of the Treasury Department may divulge or make known in any manner whatever to any person—

"(1) any original, copy, or abstract of any return, payment, or registration made pursuant to this chapter,

"(2) any record required for making any such return, payment, or registration, which the Secretary is permitted by the taxpayer to examine or which is produced pursuant to section 7602, or

"(3) any information come at by the exploitation of any such return, payment, registration, or record.

"(b) Permissible disclosure.—A disclosure otherwise prohibited by subsection (a) may be made in connection with the administration or civil or criminal enforcement of any tax imposed by this title. However, any document or information so disclosed may not be—

"(1) divulged or made known in any manner whatever by any officer or employee of the United States to any person except in connection with the administration or civil or criminal enforcement of this title, nor

"(2) used, directly or indirectly, in any criminal prosecution for any offense occurring before the date of enactment of this section.

"(c) Use of documents possessed by taxpayer.—Except in connection with the administration of civil or criminal enforcement of any tax imposed by this title—

"(1) any stamp denoting payment of the special tax under this chapter,

"(2) any original, copy, or abstract possessed by a taxpayer of any return, payment, or registration made by such taxpayer pursuant to this chapter, and

"(3) any information come at by the exploitation of any such document,

shall not be used against such taxpayer in any criminal proceeding.

"(d) Inspection by Committees of Congress.—Section 6103(f) shall apply with respect to any return, payment, or registration made pursuant to this chapter."

". . . It followed that the registration and excise tax returns filed in response to the statutory command were compelled statements within the meaning of the Fifth Amendment and accordingly were inadmissible in evidence as part of the prosecution's case in chief. . . ." (91 S.Ct. at 1163)

Except for Mackey's poor timing in having been tried prior to January 29, 1968, it seems clear that the Supreme Court would have suppressed the evidence and reversed his conviction. It also follows that if the registration and excise tax returns were inadmissible in a prosecution for income tax evasion, then records from which such returns can be prepared, since they are required by the same statutory command, are also compelled statements within the meaning of the Fifth Amendment and that they must be suppressed in a prosecution for conspiracy to gamble and gambling.

*Garner v. United States, supra,* involved a gambler equally as unlucky as Mackey but in a converse situation. Garner was prosecuted for conspiracy to operate a gambling business and the government used his federal income tax returns, which revealed him to be a gambler, as proof of the federal gambling conspiracy offense. The Supreme Court rejected his claim of Fifth Amendment privilege, holding that the disclosures were not compelled. The Court noted that the privilege protects against the use of compelled statements, written as well as oral, but emphasized that the privilege must be claimed and that it is waived if not claimed. The Court specifically noted that while one may not, with impunity, refuse to file an income tax return, he may refuse to incriminate himself on that return by claiming the privilege. Garner was simply not "compelled" because he furnished the information upon his income tax return without claiming the privilege of the Fifth Amendment.

Significantly, the Court in *Garner* distinguished the *Marchetti* and *Grosso* cases by pointing out that the federal income tax returns are not directed at those "inherently suspect of criminal activities" and that the questions are facially neutral and directed to the public at large. Thus, requiring certain basic disclosures in a neutral reporting scheme does not violate the privilege and Garner had a "free choice" which was lacking in the *Marchetti* and *Grosso* cases. (*Garner, supra,* 96 S.Ct. at 1185).

■ The federal wagering tax law is clearly directed at those "inherently suspect of criminal activities" and the statutory command is to keep a record of those activities. While it would be entirely consistent with the protection of the privilege to use the compelled records in prosecutions for evasion of the wagering tax (see *United States v. Sahadi,* 555 F.2d 23 [2d Cir. 1977]; *United States v. O'Brien,* 420 F.Supp. 834 [D.C.Conn.1976], affirm., 555 F.2d 136 [2d Cir. 1977]), the Fifth Amendment shields such use in prosecutions for other type offenses.

The Congress cannot simply pass a law compelling all the guilty people to record their crimes and then prosecute them on the basis of the incriminating records. This is the erosion of the privilege through "ingenuously drawn legislation" which was condemned in *Marchetti, supra,* 88 S.Ct. p. 704, and in *Grosso, supra.* See, also, *Haynes v. United States,* 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), decided the same day as *Marchetti* and *Grosso; Albertson v. Subversive Activities Control Board,* 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *In re Grand Jury Proceedings,* 601 F.2d 162 (5th Cir. 1979).[4]

The situation before the Court is to be contrasted with those considered in cases such as *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d

---

4. *Cf. Christian v. Buchanan,* 373 F.2d 32 (5th Cir. 1967), where the Court posed but did not decide this issue.

668 (1960); *Johnson v. United States*, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913), each of which involved records which were voluntarily maintained and not compelled by the government. When discovered by the government, such records may be freely used in the prosecution of virtually any offense.

Here, Haydel, unlike the defendants in the cited cases and unlike Garner or Sullivan in the income tax cases, is a member of a group specifically targeted because the members are inherently suspect of criminal activities, and the statutory revenue scheme mandates keeping of records of the illegal activities. The records, having been created and maintained under statutory command, are compelled incrimination. Gamblers who are subject to the statutory revenue scheme of 26 U.S.C. § 4401, et seq., must be given a choice; either they may rightfully refuse to file wagering tax returns and keep records of their gambling activities or, if such information is nevertheless compelled for revenue purposes it may not be constitutionally used against them in criminal prosecutions for non-wagering tax offenses. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *Garrity v. New Jersey*, *supra*.

Admittedly, there is a fine line between permissible and impermissible prosecutorial use of compelled records. Income tax returns are directed to all taxpayers equally, and the privilege against self-incrimination is available in connection with those returns. *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933). Consequently, persons who disclose criminal activities on their income tax returns waive the privilege by failing to claim it, as in *Sullivan, supra*, and *Garner, supra*. The line between permissible and impermissible compulsion, however fine, is nevertheless clear and discernible, and the government steps over it when, under the guise of a revenue scheme, it directs the record-keeping requirement at a group inherently suspected of criminal activities and then attempts to use the compelled records to convict for non-revenue scheme violations.

The reasoning of cases such as *Marchetti v. United States, supra, Grosso v. United States, supra*, and *Albertson v. Subversive Activities Control Board, supra*, logically prohibits use of such records against a claim of Fifth Amendment privilege.

The major flaw in the government's argument here is that it fails to recognize that the privilege of the Fifth Amendment protects the guilty as well as the innocent (*Marchetti v. United States, supra*, 88 S.Ct. at 704). Haydel, clearly a bookmaker on a large scale, is entitled to claim that privilege against prosecutorial use of the compelled records of his illegal activities except in a prosecution under the gambling tax law. These records must, therefore, be suppressed for non-wagering tax law violations.