RON SACCO, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 19562

TONY BALLESTRASSE, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 19563

December 28, 1989                    784 P.2d 947

*Michael V. Stuhff, James R. Lucas,* and *Harry E. Claiborne,* Las Vegas, for Appellant Sacco.

*Michael V. Stuhff* and *James R. Lucas,* Las Vegas, for Appellant Ballestrasse.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *Thomas L. Leen,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

In the spring of 1987, appellants Sacco and Ballestrasse operated a major bookmaking empire in Las Vegas and Los Angeles. Appellants maintained various records of their operations, which contained information used for monthly tax reports required by federal law. Pursuant to IRS regulations, the tax reports required

anyone involved in the business of accepting wagers to report the gross amount of wagers and to keep a daily record.

Subsequent to a joint investigation by law enforcement in Los Angeles and Las Vegas, appellants' records were seized and they were arrested and charged with illegal bookmaking in California. The seized records included betting slips, bookmaking ledger sheets, cassette tape recordings of bets being phoned in, tape recorded telephone conversations among the bookmaking operators including appellants, computer data, sports schedules, handwritten notes, and "bottom line" tallies or accounts showing total amounts owed.

Thereafter, appellants were indicted in Nevada for operating an unlicensed race book. Appellant Sacco filed a motion to suppress all the records seized, contending that they were kept under compulsion of federal law and could not be used against him without violating his right against self-incrimination. At the hearing on the motion, detailed testimony was presented regarding the nature of the various records seized as to whether they were kept for IRS reporting purposes or for business operational purposes. The district court suppressed only the betting slips and all the tape recordings of bets being made and accepted.

Both appellants subsequently pleaded guilty to the charges in California and filed motions to dismiss in the district court on the grounds that the Nevada prosecution was barred by NRS 171.070 and double jeopardy. They argued that the same acts of bookmaking constituted the acts charged in California and those charged here. After these motions were denied, appellants entered guilty pleas to the Nevada charges upon agreement that the issues of self-incrimination and double jeopardy would be preserved for appeal.

Initially, we note that the Fifth Amendment double jeopardy clause does not bar the Nevada prosecution because separate prosecutions in two states are permissible under the "dual sovereignty" theory. In a series of cases, the United States Supreme Court has made clear that an act considered a crime by two sovereignties is an offense that may be punished by each. *See, e.g.,* United States v. Lanza, 260 U.S. 377 (1922); Bartkus v. Illinois, 359 U.S. 121 (1959); Abbate v. United States, 359 U.S. 187 (1959); United States v. Wheeler, 435 U.S. 313 (1978).

However, through NRS 171.070, Nevada grants greater protection with respect to multiple prosecutions than does the double jeopardy clause of the Fifth Amendment. We have held that under

NRS 171.070, "a defendant may not be prosecuted after a prior conviction or acquittal 'in another jurisdiction if all the acts constituting the offense in this state were necessary to prove the offense in the prior prosecution.' " Turner v. State, 94 Nev. 518, 519, 583 P.2d 452, 453 (1978) (quoting People v. Belcher, 520 P.2d 385, 390-391 (Cal. 1974)).

The parties apparently agree that the elements constituting the crime of bookmaking in California and in Nevada are the same, other than the fact that in Nevada the prosecution must show that the bookmaking activities are unlicensed. Appellants contend that the unlicensed aspect of bookmaking in Nevada is fortuitous, a factor only because our legislature made a policy decision to legalize licensed gambling which incidentally made unlicensed gambling criminal. Appellants maintain that the licensing question is jurisdictional.

However, we do not consider the unlicensed nature of these bookmaking charges merely a technical or jurisdictional question. Rather, because licensed gaming is indispensable to Nevada's economy, we believe that the legislature proscribed unlicensed gaming because it represents a serious threat to the state's economic base. Consequently, unlicensed bookmaking in Nevada is distinctly different from unlicensed bookmaking in California for the simple reason that in Nevada it is possible to engage in licensed, legal bookmaking. Accordingly, we hold that these acts of bookmaking are different under California and Nevada law because "the acts constituting the offense in this state were [not] necessary to prove the offense" in California. See Turner, 94 Nev. at 519, 583 P.2d at 453. Therefore, appellants' prosecution in Nevada is not barred by NRS 171.070.

Appellant Sacco also contends that the seizure and use of his bookmaking records violated his constitutional right not to incriminate himself. He contends that the district court erred in suppressing only some of the records seized during the investigation because he alleges that all the records were kept solely to comply with federal laws requiring reports of wagering activity. He contends that the state is prohibited from using any of these records to prosecute him because he was compelled to keep them by federal law.

Sacco urges this court to follow the holding in United States v. Haydel, 486 F.Supp. 109 (M.D.La. 1980), in which the court ruled that gamblers "must be given a choice: either they may rightfully refuse to file wagering tax returns and keep records of their gambling activities or, if such information is nevertheless compelled for revenue purposes it may not be constitutionally

used against them in criminal prosecutions for non-wagering tax offenses." *Id.* at 115 (citations omitted).

Respondent contends that we should follow the holding in United States v. Brian, 507 F.Supp. 761 (D.R.I. 1981). In *Brian,* the court explained that consistent with the Fifth Amendment, the government "may not take the information that [bookmaking] taxpayers have provided under compulsion and use it outside the tax context to convict them of the underlying criminal activity." *Id.* at 768 (citing Marchetti v. United States, 390 U.S. 39 (1968)). Although the court approved the rationale of *Haydel,* it went on to reject a per se rule of exclusion in cases such as this one.

The *Brian* court found that, for purposes of the Fifth Amendment, "it is the *motivation* of the defendant rather than the *character* of the evidence that is important." *Id.* at 768 (emphasis in original). Thus, "[w]hen a document has been created voluntarily, . . . the fifth amendment does not bar its use in a prosecution provided the document has been obtained by a lawful seizure." *Id.* (citation omitted). The court ruled that whether a particular bookmaker kept records because of the compulsion of federal law as opposed to voluntarily in the ordinary course of business presented a question of fact. The court then adopted a procedure whereby at a suppression hearing, the defendant must initially come forward with some evidence that the seized records were kept because of the statutory mandate. Upon such a showing, the government then bears the burden of proving that the reporting requirement was not the motivating force for the record-keeping, i.e., that the records were voluntarily maintained. *Id.* at 769-70.

Sacco contends that the IRS regulations do not specify any particular format for the records a taxpayer is required to maintain and leaves to the individual the appropriate method of bookkeeping. Sacco alleges that, regardless of their form, all of the records seized consisted of raw data from which the required IRS returns could be prepared or which would support and verify the figures in an eventual audit. Thus, Sacco contends that all the records should have been suppressed pursuant to *Haydel.*

However, to adopt Sacco's position could effectively eliminate any prosecutions for illegal bookmaking activity in Nevada. Under his view, all a bookmaker has to do to avoid prosecution is claim that whatever records were kept, whether gross wager reports or additional operational records, were maintained for purposes of federal tax reports. Especially here, where none of the records seized were in the form appropriate for filing with the IRS, we will not disturb the district court's decision to suppress

only those records which yielded the required gross wager information.

Moreover, we are persuaded that the approach taken in *Brian* is the better one. Contrary to Sacco's assertion that to follow *Brian* would effectively overrule the United States Supreme Court's decision in *Marchetti*, we find that the procedure proposed in *Brian* takes into consideration the competing interests of the defendant bookmaker and the state and permits only those prosecutions to proceed in which the bookmaking records seized were not kept pursuant to federal tax laws.

Although the district court did not explain the basis for its order regarding the scope of suppression, the court's decision is supported under a *Brian* analysis, because it suppressed only the records from which gross wager information required by the IRS could be extrapolated. The remainder of the records were properly admitted because testimony at the suppression hearing showed that these records were useful for operational purposes only. Therefore, we hold that Sacco's right against self-incrimination was not violated by the district court's order suppressing only the betting slips and tape recordings of bets being made and accepted. Having found appellants' convictions not barred by NRS 171.070 and no error in the district court's order, we affirm the judgments of conviction.

YOUNG, C. J., STEFFEN and SPRINGER, JJ., and ZENOFF, SR. J.,[1] and TORVINEN, D. J.,[2] concur.

---

[1]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in place of THE HONORABLE JOHN C. MOWBRAY, Justice, who voluntarily disqualified himself. Nev. Const., art. 6, § 19; SCR 10.

[2]The Honorable Bob Miller, Governor, designated the Honorable Roy L. Torvinen, District Judge of the Second Judicial District, to sit in this case in place of THE HONORABLE ROBERT E. ROSE, Justice, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.