**UNITED STATES of America, Appellee,**

v.

**Fernando J. MONTILLA AMBROSIANI, Defendant, Appellant.**

**No. 79–1058.**

United States Court of Appeals, First Circuit.

Argued Oct. 3, 1979.

Decided Dec. 12, 1979.

Irwin Klein, New York City, for appellant.

Alberto Tellechea, Asst. U. S. Atty., with whom Jose A. Quiles, U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Defendant, the president of Montilla Records of Puerto Rico, Inc., a debtor in possession pursuant to 11 U.S.C. § 742, was tried and convicted on a nine count indictment charging violation of 18 U.S.C. § 152, "Concealment of assets; false oaths and claims; bribery." The pertinent paragraphs of this section are the following.

(1) "Whoever knowingly and fraudulently conceals . . . any property belonging to the estate of a bankrupt;"

(3) "Whoever knowingly and fraudulently makes a false declaration, certificate, verification, or statement . . . in or in relation to any bankruptcy proceeding;"

Count 1 was filed under paragraph (1).

*Count 1.* Commencing on or about March 14, 1977, up to and including December 31, 1977, defendant knowingly and fraudulently concealed from the bankruptcy court and creditors $44,355 of receipts from sales.

The subsequent eight counts were filed under paragraph (3).

*Count 2.* On or about June 6, 1977, defendant knowingly and fraudulently made false entries in documents submitted to the bankruptcy court by failing to report sales or earnings in the approximate amount of $2,766 for the month of May, 1977. *Count 3.* Same as Count 2, except August 10, 1977, $3,361, and month of June. *Count 4.* Same as Count 2, except August 10, 1977, $1,052, and month of July. *Count 5.* Same as Count 2, except October 6, 1977, $2,824, and month of August. *Count 6.* Same as Count 2, except October 6, 1977, $6,138, and month of September. *Count 7.* Same as Count 2, except February 13, 1978, $3,405, and month of October. *Count 8.* Same as Count 2, except February 13, 1978, $2,539, and month of November. *Count 9.* Same as Count 2, except February 13, 1978, $1,629, and month of December.

Thus, while Count 1 alleges concealment, between March 1977 and December 1977, of receipts from sales in the amount of $44,355, Counts 2–9 allege that between the dates of June 1977 and February 1978 defendant made false entries in documents of sales or earnings for the months of May 1977 to December 1977, inclusive, in amounts totalling $23,716.

On the eleventh day of trial, after the government had rested, defendant moved that all the evidence be struck, and for acquittal, on the ground that the indictment was multiplicitous. The court denied both motions, except that it ordered defendant acquitted on Count 10 on the ground that Count 10 was multiplicitous in light of Count 1. Count 10 read as follows.

"*Count 10.* That on April 13, 1977, . . . defendant . . . did knowingly and fraudulently make false oath or accounting . . . by failing to disclose deposits of money of the bankrupt in bank accounts other than that listed in the Statement of Affairs for bankrupt filed in the bankruptcy proceedings . . . . ."

On the government's announced theory this charged nondisclosure, in violation of para-

graph 9 of section 152.[1]  Thereafter the jury found defendant guilty on the remaining counts.  The court imposed sentences of a year and a day on Counts 1 and 2, to be served concurrently, and suspended imposition of sentence on Counts 3–9.

■ On this appeal defendant raises a number of objections which we find inconsequential.[2]  However, we are much concerned with the indictment, which defendant in his brief asserts was either "duplicitous or multiplicitous."  During the trial both of these terms were used, sometimes inaccurately and sometimes interchangeably.  At one point, when the court used both, counsel interrupted, saying, "No, we are not arguing duplicity, sir, just multiplicity."  We will stay on that route.

Defendant assumed his fiduciary position in charge of the bankrupt's business in March, 1977.  Commencing with the month of May he was obliged to, and did, file monthly reports, but he was, of course, required also to account for monies received previously.  On the government's evidence defendant deposited certain of the bankrupt's March and April receipts in his personal bank account and did not report them.  From May on, in each monthly report, defendant understated current receipts.  Counts 2–9 covered these false reports; Count 10 covered the failure to report the March and April deposits.

■ So far, so good.  We do not fault individual counts for each of the monthly reports in spite of defendant's claim that they were all part of one transaction.  *United States v. Bernstein*, 2 Cir., 1976, 533 F.2d 775, 786, *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608;  *Bins v. United States*, 5 Cir., 1964, 331 F.2d 390, 393, *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87.  The unreported bank deposits in Count 10 were properly a separate matter.  The trouble came with Count 1.  As the government conceded while opposing defendant's motions, and concedes now, the $44,355 figure in that count is the sum total of the undisclosed March and April bank deposits charged in Count 10 and of the unreported portion of the monthly receipts charged in Counts 2–9.  With respect to the March and April bank deposits there is complete redundancy—defendant is charged in Count 1 with concealing them, and in Count 10 with failing to disclose them.  This is but another name for the same rose.  The government's reliance on *United States v. Gordon*, 2 Cir., 1967, 379 F.2d 788, *cert. denied*, 389 U.S. 927, 88 S.Ct. 286, 19 L.Ed.2d 277, is misplaced.  There there was an alleged fraudulent transfer of assets as well as concealment.  In the case at bar the government disclaimed charging any impropriety in making the deposits, and charged only nondisclosure.

■ Logically, the false reports stand no better.  According to the government, it is one crime to conceal a receipt, and another to file a report that is false because the receipt is omitted.  To put it baldly, as the government did at the side bar during trial, saying that one has $5 when one has $10 is both a false statement and a concealment, and thus two separate offenses.  Possibly the Bankruptcy Act itself, which defines

1.  "Whoever, after the filing of a bankruptcy proceeding, knowingly and fraudulently withholds from the receiver, custodian, trustee, marshal, or other officer of the court entitled to its possession, any document affecting or relating to the property or affairs of a bankrupt."

2.  The fact that defendant filed the reports unsigned, and only signed them later, when the omission was called to his attention by the clerk, does not mean that he was "overreached and entrapped by the government's action in forcing his signature."  Next, the burden was not on the government to show that its evidence was not tainted.  Again, the fact that defendant's prior attorney withdrew after a magistrate had recommended he do so, but before the court had passed on the recommendation, did not mean that defendant was wrongly deprived of effective assistance of counsel.  Next, the court acted within its proper discretion in summarizing the evidence after a several day interruption of the trial.  Nor was the government, in introducing charts summarizing its accounting evidence, required to include other, separate matters which defendant relied on to show overall good intent.

"conceal" as including "falsify,"[3] is the short answer to this. However, even without the Act we could not agree with the government.

■ The government says, correctly, that the separate paragraphs of section 152 state separate crimes that may be indicted separately. This does not answer the question whether it is appropriate to allege two offenses and impose two convictions as the result of one set of facts, all of which are essential elements of each crime. We find the government supported by only one case, which, incidentally, it failed to cite. In *United States v. Schireson*, 3 Cir., 1940, 116 F.2d 881, the court held that filing a false report justified convictions both under paragraph one and paragraph three. It said, at 884,

"Defendant was indicted both for concealment and making a false oath. Making a false oath is an offense in itself. If the false oath also constitutes concealment it is arguable that there is a double punishment for the same act. One answer to this is that a man may frequently suffer two penalties for the same act if that act is the means of committing two offenses. If he kills two birds with one stone he can well be punished for killing each bird, if killing birds is an offense."

The court cited no authority, either for its holding or for its analogy. The analogy is incorrect. *Ladner v. United States*, 1958, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (injuring two federal officers by one discharge of a shotgun is a single offense); *cf. Bell v. United States*, 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (interstate transportation for immoral purposes of two women in one automobile is a single offense). Although *Ladner* and *Bell* demonstrate that the *Schireson* court engaged in loose analysis, they do not, themselves, contradict its holding, as they involved plural numbers and a single statute, while in *Schireson*, and here, there was a single set of acts and plural statutory provisions. However, their rationale is broad enough to demand the same result: presumptively Congress favors a single punishment for a single result, the method of accomplishment being merely incidental. Even more in point is *Heflin v. United States*, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (bank robbers not to be separately punished for both taking and receiving the stolen property).

A case opposed to *Schireson*, and to the government's position here, is *United States v. UCO Oil Co.*, 9 Cir., 1976, 546 F.2d 833, *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357. There the court held that a report, false in that it understated both directly and indirectly, did not constitute two crimes, *i. e.*, a misstatement and a concealment, even as to the indirect concealment. The court said, at 837,

"[T]he government charges that the making of a report which falsely states total gallons sold may also result in a device by which the true price per gallon is concealed. Reason and fairness support the conclusion that only one offense is charged."

We agree. We add that the government's claim of different elements in the case at bar is factually incorrect, and its dissertation on res judicata irrelevant.

■ Unfortunately, when the defendant first raised the question of multiplicity during trial, perhaps because counsel complicated matters by claiming Counts 2–9 were themselves multiplicious, the court may not have recognized all of the indictment's defects. At one point it seemed to accept the government's entire argument that concealment and false reports, even of the same receipts, were separate offenses. However, the court ultimately took the position that by treating the dollar figure in Count 1 as irrelevant, Count 1 was to be construed as charging defendant simply with concealing the March-April funds in his personal checking account, hence not multiplicitous with respect to Counts 2–9 and no longer multiplicitous with respect to Count 10. On this stated basis the court denied defendant's motions.

---

**3.** " 'Conceal' shall include secrete, falsify and mutilate." 11 U.S.C. § 1(7).

The defendant did not see fit to order a transcript of the charge, or of the exceptions taken thereto, if any. Accordingly, on this appeal, the burden being on defendant to show error, we assume that in putting the various counts to the jury the court continued the distinction that it had articulated to counsel. The distinction was reasonable, as well as practical. Hence, on the record before us, there was no multiplicity in the jury's consideration, or in its verdicts. Correspondingly, there was no prejudice in the concurrent sentences. *United States v. Gordon*, ante.[4]

■ We cannot leave this case without observing that the government was fortunate to have been saved in spite of itself by the court's action. There was no proper reason from the outset for including Count 1 in the indictment. If the purpose was to magnify the defendant's wickedness in the eyes of the jury beyond what was already stated in Counts 2–10, the motive was improper. *See United States v. Carter*, 3 Cir., 1978, 576 F.2d 1061, 1064; *United States v. Ketchum*, 2 Cir., 1963, 320 F.2d 3, 8, *cert. denied*, 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145. If the hope was that the court would impose long, consecutive sentences, it was an affront to the court's intelligence. Once the defendant had raised the matter, there was even less excuse for the government's doggedly adhering to its position. No possible cost would have been involved in nol prossing Count 1. At risk were not only three weeks of trial, but the entire indictment, in case our, we may add unassisted, search of the record and the authorities proved unproductive. Yet the government persisted even to the point of trying to persuade the court to reverse its manifestly correct ruling on Count 10. Even on the government's own argument Count 10 was a repetition of the concealment alleged in Count 1. We hope we do not see a case like this again.

*Affirmed.*

4. The government has not claimed that the concurrent sentences removed any prejudice even if there was multiplicity. These are exceptions to general principle, not always easy to determine. *See United States v. Ramos Algarin*, 1 Cir., 1978, 584 F.2d 562, 568. We need not decide whether the present case is one.