**UNITED STATES of America**

v.

**John BRIAN et al.**

**Crim. No. 80–0018.**

United States District Court,
D. Rhode Island.

Feb. 9, 1981.

Paul F. Murray, U. S. Atty., James H. Leavey, Sp. Atty., U. S. Dept. of Justice, Providence, R.I., for plaintiff.

John Tramonti, Jr., John A. O'Neill, Providence, R.I., Aram K. Berberian, Warwick, R.I., William Dimitri, Jr., Providence, R.I., William G. Hundley, Washington, D.C., John F. Sheehan, Providence, R.I., Morris M. Goldings, Boston, Mass., Edward J. Mulligan, Warwick, R.I., Gerald M. Smith, Avon Lake, Ohio, K. George Joovelegian, Coventry, R.I., Michael Cohen, Chicago, Ill., Matthew J. Zito, North Providence, R.I., Harold C. Arcaro, Jr., Providence, R.I., Thomas J. Grady, Warwick, R.I., Bruce Assad, Fall River, Mass., Richard Shadyac, Fairfax, Va., Charles J. Rogers, Jr., Providence, R.I., Harold Borg, Kew Gardens, N.Y., Ralph J. Gonnella, Francis Mackey, Providence, R.I., for defendants.

*Memorandum and Order*

PETTINE, Chief Judge.

Defendants in this case are under Federal Indictment for alleged gambling offenses under 18 U.S.C. §§ 2, 1084, and 1955. Much of the Government's evidence stems from a Court order that authorized wire interceptions of telephone conversations at certain telephone numbers. *See* 18 U.S.C. § 2518. As support for its request for this wire interception authorization, the Government relied on the affidavit of Federal Bureau of Investigation Special Agent Martin P. Conley. *See* 18 U.S.C. § 2518(1)(a)–(f). In this affidavit, agent Conley set out in detail the facts and information that led him to believe that sufficient probable cause existed to justify issuance of the intercept order. *Id.* Much of the information contained in the affidavit was attributed to confidential informants.

Defendants have now filed several motions challenging agent Conley's affidavit under the Supreme Court case of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendants, in the first instance, simply request a so-called *"Franks"* hearing. In support of this request, they have submitted affidavits and an offer of proof purportedly demonstrating deliberate falsehood or reckless disregard for the truth on the part of agent Conley in his affidavit supporting the Government's request for a wire interception order. Alternatively, defendants request that the Court order production of either the Government's informants or their "informant files" for examination by defendants. Defendants seek this order because, without it, they will be unable to establish their right to a full-fledged *Franks* hearing in which they can challenge the veracity of agent Conley. For the reasons that follow, I find that defendants have not established their right to a *Franks* hearing, nor have they convinced me that I should order the Government to identify its informants or produce their "informant files." However, because of the peculiar circumstances associated with this prosecution, I will order the Government to produce agent Conley for an *ex parte, in camera* interview by the Court. During this interview, I will satisfy myself of the existence of the Government's informants and of the accuracy of their statements as represented by agent Conley. If necessary, I will order production of the informants themselves for interview by the Court. In this way, I believe the Court can best protect the interests of all parties to this action and assure that justice prevails.

DISCUSSION

A. Defendants' request for a *"Franks"* hearing.

◼ In the case of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court addressed the question whether "a defendant in a criminal proceeding ever [has] the right, under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant." 438 U.S. at 155, 98 S.Ct. at 2676. The *Franks* case involved a challenge to a warrant affidavit in which two *named* individuals had allegedly provided the affiant with information that supported a finding of probable cause to search defendant's residence. Prior to trial, however, defendant's counsel moved to suppress the items discovered in the search on grounds that the warrant failed to establish probable cause, and on grounds that the affiants lied in their warrant affidavit. Counsel stated that the individuals named in the warrant affidavit would testify that they had not been "personally interviewed by the affiant, and that, although they might have talked to another police officer, any information given by them to that officer was 'somewhat different' from what was recited in the affidavit." 438 U.S. at 158, 98 S.Ct. at 2677–78. Counsel for defendant asserted that the misstatements were made in "bad faith." The State objected to defendant's proposed evidence and the trial court refused to look beyond the face of the warrant affidavit. Defendant was convicted and the State Supreme Court affirmed. On Certiorari, the Supreme Court of the United States reversed, holding that

where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155–56, 98 S.Ct. at 2676–78. Hence, after *Franks* the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth" was made by the affiant in his affidavit. This showing must be supported by an offer of proof. This part of defendant's showing, moreover, "must be more than conclusory and must be supported by more than a mere desire to cross-examine." 438 U.S. at 171, 98 S.Ct. at 2684. The offer of proof "should point out specifically the portion of the warrant affidavit that is claimed to be false," and "[a]ffidavits or sworn or other wise reliable statements of witnesses should be furnished . . . . Allegations of negligence or innocent mistake are insufficient." Finally, the showing must be directed toward the veracity of the affiant, not toward the veracity of governmental informants. *Id.* If defendant makes the required preliminary showing, the Court must then determine whether the challenged material was necessary to a finding of probable cause. If so, the defendant is entitled to a hearing. At the hearing, if defendant can establish by a preponderance of the evidence that the affiant either made deliberate misstatements or made statements with reckless disregard for the truth, and if these statements were necessary to a finding of probable cause, the Court must invalidate the warrant and suppress the fruits of the search, or, in this case, the wire tap and the subsequent searches.

In the case at hand, defendants base their request for a *Franks* hearing on their own affidavits denying that they ever did or said the things attributed to them in agent Conley's affidavit and on an alleged inconsistency in the Government's materials. I must now consider whether these elements comprise the high threshold showing required by *Franks.*

◼ Regarding defendants' affidavits denying things attributed to them by Conley's affidavit, I must first note that the Supreme Court made it very clear that a defendant's challenge must be directed at the veracity of the affiant, not the veracity of governmental informants. 438 U.S. at 171, 98 S.Ct. at 2684. The question is whether agent Conley accurately and truthfully represented what the informants told him, not whether the informants lied to agent Conley. *See United States v. Barnes,* 604 F.2d 121, 152–53 (2nd Cir. 1979); *United States v. Edwards,* 602 F.2d 458, 465 (1st Cir. 1979); *United States v. Weingartner,* 485 F.Supp. 1167, 1182–83 (D.N.J.1979). With this distinction in mind, I find that defendants' affidavits do not sufficiently implicate agent Conley's veracity. Assuming the truth of what defendants state, their offer of proof at best impugns *either* the veracity of the informants *or* the veracity of Conley. In order to establish their right to a *Franks* hearing, however, defendants must make a substantial preliminary showing of deliberate falsehood or reckless disregard for the truth on the part of agent Conley. Defendants' affidavits fail to meet this standard.

Another element of defendants' offer of proof requires some background. Agent Conley's affidavit in support of this Court's wire interception authorization relied primarily on information supplied to him by confidential informants. Several of these informants told agent Conley that they engaged in betting activity with certain defendants at certain telephone numbers. These representations, accompanied by the necessary indicia of reliability and corroborating circumstances, supplied the requisite probable cause for an order authorizing wire interceptions of calls made to and from these numbers. Defendants contend, however, that the transcripts of actual interceptions fail to show any "unidentified" callers. This fact, defendants contend, "seems strangely inconsistent with the contents of [agent Conley's] affidavit which affirmatively show substantial gambling activity between all of the informants and the 'target' defendants and the 'target' telephones." Defendants do not elaborate further on their charge and the Government has chosen not to address the argument in response. However, it seems that defendants believe that the Government would have deleted the names of informants from the tapes of the interceptions if the infor-

mants had made calls to the target telephones—thereby creating so-called "unidentified" callers on the transcripts. Assuming that defendants' argument is not frivolous, their argument thus goes as follows: because no unidentified callers were present on the transcripts, none of the informants could have called during the interception; this lack of informant calls is inconsistent with the statements made in the Conley affidavit; therefore, the informants must not exist or agent Conley must have falsified what the informants told him. I am not persuaded by defendants' arguments and even if I were, they still do not rise to the level necessary to require a *Franks* hearing. Defendants have not eliminated the possibility that the informants were good friends of theirs, were fellow defendants in this case, or that the Government does not delete names of informants who make calls during wire interceptions. Moreover, defendants arguments do not direct themselves solely to the possibility that agent Conley lied in his affidavit. Again, assuming that defendants' arguments are not frivolous, they address themselves equally to the possibility that the informants lied to agent Conley. In this situation, *Franks* does not mandate a hearing.

### B. Defendants' requests for production of informants and/or informant files.

Defendants' motions requesting production of informants for interview and/or production of informant files do not seek a *Franks* hearing. Instead, through these motions, defendants seek access to information that might support a later request for such a hearing. In providing support for their requests, several defendants have noted the existence of a newspaper article in which a former FBI agent charged that a significant proportion of the bureau's informants were nonexistent and that much of the information purportedly supplied by them was fabricated. Based on this article, defendants claim that agent Conley probably engaged in this "accepted procedure" in his affidavit in this case.

Other defendants base their request primarily on a situation which arose in the recent case of *United States v. Cortina*, 630 F.2d 1207 (7th Cir. 1980), and which highlights the dilemma faced by defendants in this case. In *Cortina*, defendants, well before trial, moved to suppress the results of some searches on grounds, *inter alia*, that the warrants were supported by a false affidavit. 630 F.2d at 1209. The defendants, in support of their motion for a *Franks* hearing, contended that information attributed to a confidential informant was untrue. The District Court judge properly denied the motion on grounds that the defendants had not made the threshold showing required by *Franks* : "defendant's affidavits did not establish that the government did not receive the information in the affidavit, but only that Source Number One may have lied or exaggerated when providing the information." *Id.* The day before trial, however, the Government released, pursuant to the Jencks Act, 18 U.S.C. § 3500, portions of Source Number One's informant file. This file, which contained notes of all contacts between the FBI and the source, supported almost none of the information attributed to Source Number One in the warrant affidavit. Defendants again moved for a *Franks* hearing and the District Court granted the motion. After three days of testimony and a government concession that probable cause for the warrant did not exist, the Court granted defendants' motions to suppress and the Court of Appeals affirmed.

The troubling aspect of the *Cortina* case and the newspaper article noted by defendants revolves around the fact that when an affidavit relies for its assertion of probable cause upon facts attributed to *confidential* informants, defendants have no way to obtain the very information they need to assert their entitlement to a *Franks* hearing. In *Cortina*, defendants discovered the informant inconsistencies *only* due to the fact that the Government chose to call "Source Number One" at trial. *See* 18 U.S.C. § 3500 and Fed.R.Crim.P. 26.2. What would have happened if the Government had not called its informant as a witness? I would ven-

ture to guess that the defendants would now be serving prison terms. In *Franks* itself, the witnesses were actually named in the warrant affidavit. Accordingly, defendants had the opportunity to investigate and decide whether the affiant had lied and could, as a result, meet the threshold requirement established by *Franks.*

In this case, agent Conley's affidavit relies primarily on facts attributed to confidential informants. Without the informant statements, I doubt that probable cause could have been found. In their request, defendants contend that they never did or said some of the things attributed to them by these informants. Defendants, however, lack the means to make anything more than these bare conclusory denials which the Supreme Court specifically rejected in *Franks.* Because all of agent Conley's informants were confidential, defendants have no way of corroborating their belief that he deliberately falsified his statements or made such statements in reckless disregard of the truth. Further, if the Government decides not to call its informants at trial, defendants may never be able to surmount the barrier erected in *Franks.*

On the other hand, I am sensitive to the need to protect the identities of confidential informants and I have doubts as to whether defendants' requests, supported, as they are, by a newspaper article and by the *Cortina* case, rise to the level of serious consideration. However, because of the peculiar circumstances of this case, I am going to order an *ex parte, in camera* proceeding in which I will satisfy myself of agent Conley's veracity. In this way, the Court best serves the interest of defendants in securing their Fourth Amendment rights and the interests of the Government in keeping the indentities of its informants secret.

I find authority for this extraordinary proceeding in the discretion afforded district courts to require the Government to release the identities of its confidential informants when the need for disclosure that would be "relevant and helpful to the defense of the accused" or "essential to a fair

determination of the cause," outweighs the Governmental interest in the free flow of informant information. *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957). In this case, I find that, although defendants' arguments do not mandate identification of the Government's informants, such arguments do require that the Court satisfy itself of the veracity of agent Conley. *Cf. United States v. Pastore,* 487 F.Supp. 1372, 1373 (S.D.N.Y.1980) (court conducted *in camera* interview of informant in connection with probable cause determination). This requirement stems from the need to assure that the defendants' Fourth Amendment rights have not been unfairly prejudiced. The Supreme Court, in *Franks,* held that upon a sufficient showing, the Fourth Amendment requires a hearing to validate a warrant affidavit. I am now deciding that in a case where—because the Government's affidavit relies primarily on the use of confidential informants—defendants lack the very information that *Franks* requires for a threshold showing; where defendants deny, via affidavit, specific facts attributed to them by informants; and where defendants make some minimal showing of inconsistency on the face of the government's material which supports their assertion of deliberate falsehood or reckless disregard for the truth, the Court may, and probably should, conduct an *in camera* interview of the affiant, and, if necessary, of the informants relied upon by the Government. This requirement will insure that, in a situation where no other means are present and where it is unclear whether the Government will call its informants at trial, defendants have some measure of protection from Governmental perjury and misstatement. Such protection is necessary for the same reason that a *Franks* hearing is necessary:

a flat ban on impeachment of veracity could denude the probable-cause requirement of all real meaning. The requirement that a warrant not issue "but upon probable cause, supported by Oath or affirmation," would be reduced to a nullity if a police officer was able to use deliber-

ately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile. 438 U.S. at 168, 98 S.Ct. at 2682. In the classic *Franks* situation, defendants are assumed to have the preliminary information they need to make the required "substantial preliminary showing." In a case like the one at hand—where the basis for a probable cause finding rested in statements attributed to confidential informants—defendants lack the ability to protect their Fourth Amendment rights through the mechanism adopted in *Franks.* Moreover, it is in precisely this situation that the Government has the greatest opportunity to falsify affidavits.

It might be argued that the Judge or Magistrate can adequately protect defendants' interests when the Government initially applies for a warrant. Such argument, however, applies equally to the *Franks* situation—and was rejected by the majority in *Franks*—and ignores the nature of the *ex parte* warrant application. At that stage, the only question considered by a Judge or Magistrate is whether probable cause for the issuance of a warrant exists. In making this determination, the Court applies the two prong test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Court does not have the benefit of argument from defendants or of subsequent developments in the case to inform its decision. The extraordinary proceeding that I order today provides protection for defendants who have no opportunity to challenge the initial probable cause determination and who lack the means to mount the threshold established by the Supreme Court in *Franks.* *Cf. United States v. Martin,* 615 F.2d 318, 329 (5th Cir. 1980) (court recognizes problem of proof that often confronts defendants in *Franks* request). To afford less protection to defendants who find themselves in such a situation would "denude the probable-cause requirement of all real meaning" in much the same way that a *blanket* ban on attacks of the government's

affidavit would. I refuse to read the probable-cause requirement out of the Constitution by concluding that the initial probable cause determination provides defendants who cannot make a full-fledged *Franks* showing with their sole protection against Government falsehoods. If defendants can make the showings required by this opinion, the Court will undertake its own inquiry regarding the affiant's veracity. In this way, I can be sure that the Government's interest in the continued and vital free flow of information is not prejudiced and that defendants Fourth Amendment rights are not stripped of all meaning.

Accordingly, I deny the defendants' motion for a *Franks* hearing, for production of informants, and for production of the Government's informant files. However, I order the Government to present agent Conley for an *in camera* interview by the Court and, if necessary, to present the informants relied upon in agent Conley's affidavit for a similar interview.

## DEFENDANT MARTIN'S MOTION FOR SUPPRESSION OF SEIZED DOCUMENTS ON GROUNDS OF FIFTH AMENDMENT

Defendant Martin has been charged with using a telephone for the transmission of bets and wagers while engaged in the business of betting and wagering. He has moved to suppress certain papers showing 1) the gross amounts of wagers allegedly accepted by him on four dates, and 2) an account of various amounts owed to or by various bettors who allegedly dealt with him. These papers were seized from Martin's residence pursuant to an unchallenged search warrant. Martin argues that if he were in the business of accepting wagers as alleged in the indictment, then he was required by 26 U.S.C. § 4403 to keep the records that were seized; if he were compelled by the Tax Code to maintain such records, then their use against him in a gambling prosecution would violate his Fifth Amendment privilege against self-incrimination.

■ The basic principles that control resolution of this issue are well-established. The government may constitutionally single out groups that are "inherently suspect of criminal activities" and impose upon them special tax and registration requirements. Consistent with the Fifth Amendment, however, it may not take the information that such taxpayers have provided under compulsion and use it outside the tax context to convict them of the underlying criminal activity. *See Marchetti v. U.S.*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. U.S.*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

Section 4411 of the Internal Revenue Code imposes a special occupational tax on bookmakers, while § 4401 levies an additional, excise tax on all gross wagers they accept. As an aid in figuring the latter tax, § 4403 requires the bookmaker to retain daily records detailing the volume of his betting business. Section 4412 requires him to register with the Internal Revenue Service and, on paying the occupational tax, to receive a special stamp. In order to ensure that these requirements do not infringe on the bookmaker's Fifth Amendment rights, § 4424 strictly limits the uses to which the resulting materials can be put. *See Marchetti, supra* and *Grosso, supra.* With limited exceptions, the Treasury Department is forbidden to reveal to anyone either the excise tax returns and registration forms, or the corroborating records the bookmaker is required to keep. That section also prohibits use of the stamp, registration form, or tax return in any criminal prosecution of the taxpayer other than one to enforce the wagering tax provisions themselves. Section 4424 is silent, however, on the permissibility of using the daily betting records in a non-tax related prosecution.

■ In a thorough and carefully reasoned opinion, the federal district court for the Middle District of Louisiana has held that the government may not use such betting records to convict of gambling a bookmaker who has kept the records because of the statutory mandate. *See U.S. v. Haydel,* 486 F.Supp. 109 (D.C.1980). This result

seems to me thoroughly consistent with, and in fact required by, the reasoning of *Marchetti* and *Grosso.* Just as the government may not compel a bookmaker to obtain a special stamp for tax purposes and then present this registration as evidence that he is a gambler, so it may not require him to keep records of his betting activity and then use the fruits of his compliance to convict him of running a wagering business.

■ Here, the Government does not dispute that the materials seized from Martin's home were records of the type required by § 4403 to be kept. In this circumstance, the defendant would have me adopt a *per se* rule: that is, having charged a defendant with being a gambler and having adduced what are admittedly § 4403-type materials in support of that charge, the goverment is conclusively estopped from arguing that those records were not kept under the compulsion of its own statutory mandate. I do not believe that such an absolute rule is required by the constitional principle involved here.

■ For purposes of Fifth Amendment analysis, it is the *motivation* of the defendant rather than the *character* of the evidence that is important. In the words of the First Circuit, "The fifth amendment proscribes *compelled* self-incrimination, not incriminating statements." *U.S. v. Rios Ruiz,* 579 F.2d 670, 675 (1st Cir. 1978) (emphasis added). "The essential predicate for a fifth amendment claim is a finding that an accused has been 'compelled' to incriminate himself." *U.S. v. Corbo,* 555 F.2d 1279 (5th Cir. 1977). "[T]he privilege can be invoked only when the actual preparation of the documents or the making of the written declarations which they contain has been compelled. When a document has been created voluntarily, ... the fifth amendment does not bar its use in a prosecution provided the document has been obtained by a lawful seizure." *Fagan v. U.S.,* 545 F.2d 1005, 1007 (5th Cir. 1977). *See Andresen v. Maryland,* 427 U.S. 463, 471–78, 96 S.Ct. 2737, 2743–47, 49 L.Ed.2d 627 (1976).

To accept defendant's *per se* approach, I would have to conclude that records of the type involved here are *invariably* kept *only* because of the mandate of § 4403. It is one thing to assume, as did the Supreme Court in *Marchetti* and *Grosso*, that gamblers would not file tax forms, pay excise taxes, and register with the IRS as gamblers, absent some statutory duty. It is quite another to assume that bookmakers keep records of daily betting activity and accounts of amounts owed by and to their customers only because the Tax Code requires it. Unless a bookmaker has a very small clientele or a very good memory, he is likely to keep some written accounting, quite voluntarily, in the "ordinary course" of his "business." If such freely prepared documents come into the government's possession through a legitimate search, the fact that there is coincidentally a statute which requires their maintenance does not transform voluntary, though unfortunate, admissions into coerced incrimination. In other words, it seems to me a question of fact, to be resolved according to the particular circumstances of each case, whether or not a particular bookmaker kept such records *because of* the command of § 4403.

Without implying that they are the only relevant types of evidence on this issue, I would point out two areas of inquiry that seem material to the question of a defendant's motivation. First and foremost is his compliance, or lack thereof, with other portions of the wagering tax statute. Section 4403 does not exist in a vacuum. Rather, it is one facet of a multi-part scheme for regulating the business of wagering. Defendant's behavior with respect to the other elements of this scheme gives rise to inferences about his motivation in keeping the disputed records. Also pertinent is the age of the records. The presence of comprehensive records chronicling the course of a bookmaker's wagering business over time and having no utility in monitoring current transactions raises the inference that such documents are being maintained for tax purposes. Unlike the district court in *Haydel*, I do not believe that any of these factors is conclusive; they are at best circumstantial evidence of the motivation of the recordkeeper.

 It remains to detail the procedures by which the Fifth Amendment challenge is to be resolved. Normally, in a motion to suppress evidence, the defendant has the initial burden of adducing evidence that his constitutional or statutory rights have been violated. *See, e. g., Kastigar v. U.S.*, 406 U.S. 441, 461–62, 92 S.Ct. 1653, 1665–66, 32 L.Ed.2d 212 (1972); *U.S. v. Montilla Ambrosiani*, 610 F.2d 65, 68 n.2 (1st Cir. 1979); *U.S. v. Evans*, 572 F.2d 455, 486 (5th Cir. 1978), *cert. denied sub nom. Gent v. U.S.*, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). The presence of § 4403 makes this a rather peculiar case, however. It could be argued that the defendant is entitled to at least an initial presumption that he obeyed the law and recorded betting information because he was statutorily required to do so, thus placing on the government the burden of first producing some evidence to the contrary. The best evidence in that regard would seem to be a defendant's non-compliance with other elements of the wagering tax code. As I read § 4424, however, the IRS is forbidden to reveal such information to other arms of the government in any context except tax prosecutions. Thus, the tax code both makes out the defendant's *prima facie* case of self-incrimination and places the most relevant counter–evidence beyond the government's reach.

 In these circumstances, I think the appropriate procedure is as follows. Defendant must initially come forward with some evidence that he kept the seized records because of the statutory mandate. Specifically, he should produce evidence of his compliance with other provisions of the wagering tax laws. Once defendant has made this showing, the government bears the burden of proving that § 4403 was not the motivating force for the recordkeeping. If defendant cannot demonstrate his compliance with the other wagering tax provisions, he must adduce some other evidence (such as the age and comprehensiveness of the records) to support the inference that

he kept the seized documents because of § 4403's compulsion. Only then must the government assume the burden of proving that the records were voluntarily maintained.

All this will take place in the context of a suppression hearing. As in the case of a hearing to establish standing under the Fourth Amendment, statements made by the defendant in the course of the hearing will not be admissible against him at trial.

The hearing for defendant Martin on this issue is hereby scheduled for February 23, 1981, at 9:00 a. m. Pursuant to the motions for incorporation, I assume that at least some of the other defendants make a Fifth Amendment claim analogous to that raised by Martin. Any defendant requesting a suppression hearing on these grounds will so notify the Court by February 17, 1981, and should be prepared to go forward at a hearing on February 23, 1981.