UNITED STATES of America, Appellee,

v.

Albert L. CHRISTNER, Appellant.

No. 95–1007.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1995.

Decided Sept. 15, 1995.

Gregory Beal, Ogallala, NE, argued, for appellant.

Alan Everett, Lincoln, NE, argued, for appellee.

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Albert L. Christner, a former livestock farmer and Chapter 11 bankruptcy debtor, appeals from a final judgment entered in the United States District Court [1] for the District of Nebraska upon a jury verdict finding him guilty on three counts of bankruptcy fraud in violation of 18 U.S.C. § 152. For reversal, defendant argues that (1) the evidence was insufficient as a matter of law to support his conviction; (2) the charges in the indictment were multiplicitous in violation of the double jeopardy clause; (3) a condition of pretrial release, which required him to refrain from possessing firearms, violated his right to bear arms; and (4) the district court erred in detaining him pending sentencing. For the reasons discussed below, we affirm.

## Background

Defendant filed for Chapter 11 bankruptcy in December 1986. His main creditor in the bankruptcy proceedings was the First State Bank of Enders, Nebraska (Bank), which filed a claim for approximately $156,000. According to the government's evidence at trial, sometime in 1988 or early 1989, while defendant's Chapter 11 bankruptcy matter was still pending, defendant transferred $25,800 into a bank account in his wife's name—an account which no one involved in the bankruptcy proceedings knew about—and did not disclose the transfer to his creditors as required under Chapter 11. Furthermore, on March 30, 1989, defendant sold twenty-six head of cattle for $10,231.41 and deposited the proceeds of the sale in an account in the name of Horseshoe Ranch Trust, which was unknown to those involved in the bankruptcy proceedings. He failed to disclose the deposit of the sale proceeds to his creditors as

1. The Honorable William G. Cambridge, Chief United States District Judge for the District of Nebraska.

required under Chapter 11. Count I of the indictment charged defendant with concealing the $25,800 from his creditors. Count II charged him with concealing the $10,231.41 in proceeds from the livestock sale from his creditors. Count III charged him with making a false statement under penalty of perjury by submitting in the bankruptcy proceedings a monthly report that failed to disclose either the livestock sale or the $25,800 bank transfer.[2] Counts I and II charged defendant with violating 18 U.S.C. § 152(1); Count III charged him with violating § 152(3).[3]

Defendant's trial began on July 26, 1994. The jury returned a verdict of guilty on all three counts in the indictment on July 28, 1994. One of the conditions of defendant's pretrial release required him to surrender all of his firearms and refrain from possessing any firearms pending the outcome of the trial pursuant to 18 U.S.C. § 3142(c)(1)(B)(viii).[4]

After defendant was found guilty, the district court ordered defendant detained pending sentencing pursuant to 18 U.S.C. § 3143(a).[5]

On August 8, 1994, the district court held a hearing to consider defendant's motion for release on bond pending sentencing. Defendant did not testify at the hearing. His counsel called three witnesses, two of whom were friends of defendant and the other was defendant's wife. They each testified to defendant's good character and their belief that he was neither a flight risk nor a danger to himself or anyone else. His wife also stated that defendant would sometimes say things he did not mean. The government called several witnesses. An FBI agent testified that defendant was known to be associated with a group called "We The People," a multi-state organization which allegedly promotes violence against law enforcement authorities. Others testified regarding statements allegedly made by defendant threaten-

2. The indictment also included a Count IV, which charged defendant with making a false statement by failing to disclose on a later monthly report the transfer of $10,500 into an account not known or revealed to his creditors; the district court dismissed this count during trial because the statement at issue was made after the bankruptcy case had been dismissed.

3. 18 U.S.C. § 152 provides in pertinent part:

A person who—
(1) knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor;
....
(3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;
....
shall be fined not more than $5,000, imprisoned not more than 5 years, or both.

4. 18 U.S.C. § 3142(c)(1)(B)(viii) provides:

(c) **Release on conditions.**—(1) If the judicial officer determines that the release described in subsection (b) of this section will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—
....

(B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—
....
(viii) refrain from possessing a firearm, destructive device, or other dangerous weapon....

5. 18 U.S.C. § 3143(a) provides:

(a) **Release or detention pending sentence.**—(1) Except as provided in paragraph (2) [allowing exceptions where (1) the judicial officer finds it substantially likely that a motion for acquittal or new trial will be granted, (2) the government has recommended that no term of imprisonment be imposed, or (3) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community], the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

ing to kill or cause harm to bankers and law enforcement authorities in connection with his bankruptcy, to FBI agents in connection with this criminal case, and to himself and his wife if he were to be convicted. An officer with the Nebraska State Patrol also testified that, on one occasion when he was working undercover and posing as an anti-government mercenary, he was approached by defendant and two other individuals; after the officer stated that he could do "serious" work for them, one of defendant's companions allegedly asked "what would you charge me to kill a judge, a sheriff and two attorneys?" Defendant then allegedly stated "you're just the type of guy we've been looking for." The officer testified that a follow-up meeting never took place because word of the investigation leaked out. At the close of the hearing, the district court held that defendant had failed to meet his burden of proving by clear and convincing evidence that he was neither a flight risk nor a danger to the community. The district court noted in particular that the government had presented evidence of threatening statements made by defendant with respect to law enforcement officers and others, which defendant made no effort to rebut or deny. Transcript of bond hearing (Aug. 8, 1994) at 59–61.

On November 21, 1994, defendant was sentenced under the guidelines to three concurrent eighteen-month terms of prison, three concurrent three-year terms of supervised release, special assessments totalling $150.00, and restitution in the amount of $60,338.96. This appeal followed.

## Discussion

*Sufficiency of the evidence*

Defendant argues that the evidence was insufficient as a matter of law to support the jury's verdict on each of Counts I, II, and III of the indictment. As to Counts I and II generally, defendant contends that "the government's case fails for lack of proof of intent on the part of [defendant].... [T]here just can't be a reasonable inference of intent to conceal drawn from the facts in this case." Brief for Appellant at 19. As to Counts II and III, for concealing the proceeds from the cattle sale and later failing to disclose the sale, defendant argues that the evidence was insufficient to show that he had the requisite intent to conceal or to defraud because the Bank did receive notice of the sale and could have located the movement of the proceeds of the cattle sale through one of his IDS accounts into the account under the name of the Horseshoe Ranch Trust. Defendant notes that his bankruptcy attorney wrote a letter to the Bank's attorney on March 31, 1989, the day after the cattle sale, notifying the Bank that defendant had sold the cattle for $10,231. Defendant further maintains that "[t]here were no big secrets about the family trust, the Horseshoe Ranch Trust." Brief for Appellant at 18. Defendant provides no specific argument to support his insufficiency claim as to Count I (for concealing the $25,800) or the related aspect of Count III (for making a false statement regarding the deposit of the $25,800).

"The standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly." *United States v. Burks*, 934 F.2d 148, 151 (8th Cir.1991) (*Burks*). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir.), *cert. denied*, 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992). "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *Id.* "A conviction may be based on circumstantial as well as direct evidence.... The evidence need not exclude every reasonable hypothesis except guilt." *Id.* (citation omitted). "If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." *Burks*, 934 F.2d at 151.

The district court instructed the jury that the government had the burden to prove the following four elements in order to prove concealment, as charged in Counts I and II of the indictment: (1) defendant's Chapter 11

proceeding in bankruptcy was in existence at the relevant times; (2) the property allegedly concealed belonged to the bankruptcy estate at the relevant times; (3) defendant concealed the property from creditors of the bankruptcy estate during that period of time; and (4) defendant concealed the property knowingly and fraudulently. Appellant's Appendix at 85, 86 (Instructions Nos. 6 and 7). The district court further instructed the jury that the government was required to prove the following four elements in order to prove the false statement, as charged in Count III of the indictment: (1) defendant's Chapter 11 proceeding in bankruptcy was in existence during the relevant time frame; (2) defendant made a declaration under penalty of perjury, on a report which was filed in the bankruptcy proceeding, that the report was true and correct to the best of his knowledge and belief; (3) the declaration was false because the report failed to disclose the cattle sale or because the report failed to disclose the disbursement of the $25,800; and (4) defendant made such false declaration knowingly and fraudulently. Appellant's Appendix at 87 (Instruction No. 8).

As noted above, defendant's sufficiency argument focuses solely on the issue of intent. Upon careful review, we hold that the evidence was sufficient to support the jury's verdict on this issue with respect to each of the three counts for which he was convicted. As to Count I, the evidence showed that on March 7, 1989, the bankruptcy court instructed defendant to disclose the whereabouts of some $24,000 which was believed to be part of the bankruptcy estate but was at that time unaccounted for. Shortly thereafter, on or about March 23, 1989, defendant transferred $25,800 from an IDS account in his name to his wife's Putnam Mutual Funds (Putnam) account; at that time, neither defendant's attorney nor his accountant knew about the Putnam account. Defendant never voluntarily informed his attorney, his accountant, or the Bank of the existence of his wife's Putnam account or the deposit of the $25,800 into that account.

As to Count II, the evidence showed that on the March 7, 1989, the bankruptcy court informed defendant that the Bank had a right to know the location of its collateral, including defendant's cattle, and that the Bank had a right to inspect defendant's cattle on or before April 3, 1989. On March 30, 1989, defendant sold twenty-six head of cattle for $10,231.41. On April 5, 1989, defendant deposited the proceeds of the cattle sale into an IDS account in his name (not the same IDS account through which he moved the $25,800). On or about April 21, 1989, defendant opened a new IDS account in the name of the Horseshoe Ranch Trust and transferred $10,500 to that account from the IDS account in which he had deposited the proceeds from the cattle sale; at that time, the creation of the Horseshoe Ranch Trust account was unknown to defendant's attorney, his accountant, or the Bank. Defendant never voluntarily told his creditors about the Horseshoe Ranch Trust account or his deposit of $10,500 into that account.

Finally, as to Count III, the evidence showed that, on or about May 19, 1989, defendant filed with the bankruptcy court a monthly report covering the period from March 6, 1989, to April 3, 1989, in which he failed to disclose the sale of twenty-six head of cattle for $10,231.41 and failed to disclose the transfer of $25,800 into his wife's Putnam account.

When the evidence is viewed in the light most favorable to the government and all reasonable inferences supporting the jury's verdict are accepted, it was not unreasonable for the jury to conclude that defendant knowingly and fraudulently concealed property of the bankruptcy estate from his creditors and knowingly and fraudulently made a false declaration under penalty of perjury in the bankruptcy proceedings. Accordingly, we hold that the evidence was sufficient to support the jury's verdict on each of Counts I, II, and III of the indictment.

*Multiplicity of counts*

Defendant also contends that the charges in the indictment were multiplicitous in violation of the double jeopardy clause. Defendant argues "[t]he same and identical assets which [the government] allege[s] were concealed in Counts I and II, were found missing from the financial reports filed with the

Bankruptcy Court. We are talking about the same assets, the same funds." Brief for Appellant at 20. In essence, defendant maintains that the violations charged in Counts I, II, and III are all part and parcel of the same transaction or offense and, therefore, the false declaration charge in Count III unconstitutionally repeats the concealment charges in Counts I and II. We disagree.

▪ As a threshold matter, we note that defendant was sentenced to concurrent eighteen-month terms of imprisonment on Counts I, II, and III, which might suggest that double jeopardy is not in issue. However, defendant received statutory special assessments totalling $150.00, representing a $50.00 assessment for each of the three counts. He therefore was subjected to multiple punishments, within the meaning of the double jeopardy clause. *United States v. Grubbs*, 829 F.2d 18, 19 (8th Cir.1987) (per curiam) (although the defendant received concurrent sentences on his conspiracy and continuing criminal enterprise convictions, he received multiple punishment as a result of cumulative mandatory special assessments for each count) (citing *United States v. Kirk*, 723 F.2d 1379, 1381 (8th Cir.1983), *cert. denied*, 466 U.S. 930, 104 S.Ct. 1717, 80 L.Ed.2d 189 (1984)).

▪ "An indictment which charges a single offense in multiple counts is multiplicitous." *United States v. Rimell*, 21 F.3d 281, 287 (8th Cir.) (citing *Gerberding v. United States*, 471 F.2d 55, 58 (8th Cir.1973)), *cert. denied*, —— U.S. ——, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994). "The vice of this practice is that multiple sentences may result. Likewise, it may suggest to the jury that the defendant committed more than one crime." *United States v. Dixon*, 921 F.2d 194, 196 (8th Cir.1990) (citing *United States v. Kazenbach*, 824 F.2d 649, 651 (8th Cir.1987); 1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469, 475–76 (1982)). Our review on appeal is *de novo. United States v. Bennett*, 44 F.3d 1364, 1368 (8th Cir.1995) (*Bennett* ).

Stating the rule against multiplicity is a relatively simple proposition; discerning the proper judicial test for implementing the rule

is, however, more difficult. One scholar has provided the following commentary.

> The yardstick in determining whether there is ... multiplicity is whether one offense or separate offenses are charged, and ... this is a difficult and subtle question. The test announced most often in cases is that offenses are separate if each requires proof of an additional fact that the other does not. This seems of little value as a test. The real question is one of legislative intent, to be ascertained from all the data available.

1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469, 477–78 (1982). This observation is well supported by the case law. *See, e.g., Ladner v. United States*, 358 U.S. 169, 175, 79 S.Ct. 209, 212–13, 3 L.Ed.2d 199 (1958) ("we cannot find that Congress intended that a single act of assault affecting two officers constitutes two offenses under the statute"); *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) (under Mann Act, a single offense is committed when two or more women are transported in interstate commerce for immoral purposes in a single trip); *Bennett*, 44 F.3d at 1373 ("Congress intended to permit separate prosecutions for drug conspiracy offenses under sections 846 and 848 and for RICO and RICO conspiracy offenses"); *United States v. Barnhart*, 979 F.2d 647, 651 (8th Cir.1992) (bank fraud statute was modeled on mail and wire fraud statutes and is to be construed broadly; therefore, each execution of a scheme to defraud constitutes a separate indictable offense).

The cases cited above illustrate another point as well: that the issue of multiplicity arises in a wide variety of contexts. For example, an often heard multiplicity argument is that distinct counts in the indictment charge the defendant for acts which, together, constitute a single offense but, individually, do not each constitute a separate offense. Multiplicity also becomes an issue when a single act is the basis for charging two or more separate offenses, each for the violation of a separate statutory provision. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (*Blockburger* ), provides a classic example of both of these types

of double jeopardy claims. In *Blockburger*, the petitioner challenged his criminal conviction on double jeopardy grounds where he was charged and convicted on three separate counts (counts 2, 3, and 5) arising from two separate sales of morphine hydrochloride to a single purchaser. Count 2 charged him with selling ten grains of the drug not in or from the original stamped package, in violation of § 1 of the Harrison Narcotic Act; count 3 charged him with selling eight grains of the drug, on the following day, in violation of § 1 of the Narcotic Act; and count 5 charged him with making the eight-grain sale without a written order from the purchaser, in violation of § 2 of the Narcotic Act. *Id.* at 301, 52 S.Ct. at 181. The petitioner alleged that the two separate acts referenced in counts 2 and 3 together constituted a single offense. He further argued that the second sale was a single transaction for which he could not be charged with two separate offenses. *Id.* The Supreme Court rejected both arguments. As to the petitioner's first argument, the Court applied a statutory intent test.

> The Narcotic Act does not create the offense of engaging in the business of selling the forbidden drugs, but penalizes any sale made in the absence of either of the qualifying requirements set forth. Each of several successive sales constitutes a distinct offense, however closely they may follow each other.

*Id.* at 302, 52 S.Ct. at 181. As to the petitioner's second argument, the Court applied the so-called "same elements" test.

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182.

■ In the present case, defendant apparently concedes that the two acts of conceal-

ment, charged in Counts I and II of the indictment under § 152(1), may be treated as separate offenses. However, defendant argues that the act of making a false statement, charged in Count III under § 152(3), may not be treated as separate from the acts of concealment because the statement referred to the very same property as that which was allegedly concealed. We disagree.

■ In *Bennett*, the defendant raised a double jeopardy challenge to his successive prosecutions [6] for overlapping conspiracies. In that case, we held that both tests from *Blockburger* had to be satisfied in order for the successive prosecutions to pass constitutional muster; in other words, failure to pass either the statutory intent test or the same elements test would result in a double jeopardy violation. 44 F.3d at 1373. Citing *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), this court devised the following two-part analysis.

> First, a court must ask whether Congress "intended that each violation be a separate offense." ... If it did not, there is no statutory basis for the two prosecutions, and the double jeopardy inquiry is at an end.... Second, if Congress intended separate prosecutions, a court must then determine whether the relevant offenses constitute the "same offense" within the meaning of the Double Jeopardy Clause.

*Bennett*, 44 F.3d at 1373 (citations omitted). As to this second inquiry, the court explained "[t]he double jeopardy bar applies only to prosecutions or convictions which cannot survive the 'same elements' test." *Id.* As stated above, "where the same act or transaction constitutes a violation of two distinct statutory provisions," the test "is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.[7]

---

6. The same analysis applies whether the double jeopardy issue arises as a result of multiple punishments or as a result of successive prosecutions. *United States v. Bennett*, 44 F.3d 1364, 1372 (8th Cir.1995).

7. We note that, where the double jeopardy challenge focuses on separate punishments or prose-

cutions for separate acts allegedly violating the *same* statutory provision, the "same elements" test, as enunciated in *Blockburger*, does not apply. In such cases, the issue is one of statutory intent. *See, e.g., United States v. Rimell*, 21 F.3d 281, 287 (8th Cir.) (because bank fraud statute was intended to be broadly construed, separate

Upon careful consideration of the language and structure of § 152, we hold that Congress intended that an act of intentionally concealing property of the bankruptcy estate and the act of knowingly making a false statement to the bankruptcy court under penalty of perjury constitute two separate offenses under the statute where, as in this case, the concealment and the statement were separate acts, even if the concealment and the false statement involved the very same property. Thus, the statutory intent test is met. Moreover, Counts I and II, alleging violations of § 152(1), required the government to prove concealment, which § 152(3) (making a false statement under penalty of perjury) did not; conversely, Count III, alleging a violation of § 152(3), required proof of a false statement made under penalty of perjury, which § 152(1) did not. Thus, the same elements test is also met.

Additionally, we note that defendant, in support of his double jeopardy argument, relies on *United States v. Montilla Ambrosiani*, 610 F.2d 65, 67–69 (1st Cir.1979) (*Montilla Ambrosiani*), *cert. denied*, 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). The First Circuit held in *Montilla Ambrosiani* that the indictment was multiplicitous because Count 1, which alleged unlawful concealment of bankruptcy estate funds received and deposited by the defendant during a period from March 1977 through December 1977, was essentially the same as Counts 2–10, which alleged the making of false entries in the debtor's monthly bankruptcy reports (Counts 2–9, referring to May through December 1977 receipts) and in a statement of affairs (Count 10, referring to March and April 1977 receipts). In that case, however, not only did the overlapping

concealment and false statement counts involve the very same funds, they were also based upon the exact same acts of nondisclosure. Thus, the First Circuit opined that, to call a single act of nondisclosure both a concealment and a false statement, "is but another name for the same rose." *Id.* at 68.

We do not take issue with the First Circuit's reasoning in *Montilla Ambrosiani*, as it applies to the specific facts of that case. However, there are critical differences between *Montilla Ambrosiani* and the case at bar which make the reasoning in that case inapplicable here. The most significant distinction is that, in *Montilla Ambrosiani*, "the government *disclaimed charging any impropriety in making the deposits*, and charged only nondisclosure." *Id.* (emphasis added). In other words, the government's position in *Montilla Ambrosiani* was that a single nondisclosure in a document filed with the bankruptcy court could support separate charges of both concealment and making a false statement. "To put it baldly, as the government did ..., saying one has $5 when one has $10 is both a false statement and a concealment, and thus two separate offenses." *Id.* In the present case, by contrast, the government has never claimed that the acts of concealment charged in Counts I and II occurred when defendant made the false statements in his monthly bankruptcy report. Rather, the government alleged that defendant (1) knowingly and fraudulently concealed property of the bankruptcy estate *at the time he deposited the $25,800* in his wife's Putnam account and (2) knowingly and fraudulently concealed property of the bankruptcy estate *at the time he deposited the $10,231.41*, representing the proceeds from the cattle sale, into the account in the name of the Horseshoe Ranch Trust.[8] Those being

counts for each separate act of bank fraud held not to be multiplicitous), *cert. denied*, —— U.S. ——, 115 S.Ct. 453, 130 L.Ed.2d 362 (1994). These cases may also implicate the "unitary harm rule" which was applied by this court in *United States v. Graham*, 60 F.3d 463, 467 (8th Cir.1995).

8. We also note that Counts I and II of the indictment allege time frames that are different from that which is alleged for Count III. The alleged time frame for the offense of concealment charged in Count I is March 23, 1989, through

May 10, 1989; according to the government's evidence, defendant deposited the $25,800 in his wife's Putnam account on March 23, 1989. The alleged time frame for the offense of concealment charged in Count II is March 30, 1989, through May 10, 1989; according to the government's evidence, defendant sold the twenty-six head of cattle on March 30, 1989, and deposited the $10,500 in the Horseshoe Ranch Trust account on April 21, 1989. Count III refers to a time frame of April 25, 1989, through May 19, 1989; as stated in the indictment, April 25, 1989, is the

separate acts from the false statement charged in Count III, *Montilla Ambrosiani* does not apply. Accordingly, we hold that the counts charged in the indictment were not multiplicitous in violation of defendant's rights under the double jeopardy clause.

### 18 U.S.C. § 3142(c)(1)(B)(viii)

▆ Defendant also challenges on appeal the condition of his pretrial release, imposed by the district court, which required him to surrender all his firearms and refrain from possessing any firearms pending the outcome of the trial. 18 U.S.C. § 3142(c)(1)(B)(viii) (a judicial officer has the discretion to impose conditions of release pending trial, including the requirement that the defendant refrain from possessing firearms, in consideration of the defendant's flight risk or potential danger to other individuals or the community). Defendant argues that the imposition of this statutory condition violated his constitutional right to bear arms.

In response, the government disputes defendant's Second Amendment argument on the merits, citing *Cody v. United States*, 460 F.2d 34, 36–37 (8th Cir.1972) ("[T]he right to bear arms is not an absolute bar to congressional regulation of the use or possession of firearms. The Second Amendment's guarantee extends only to the use or possession which 'has some reasonable relationship to the preservation of efficiency of a well regulated militia.'") (citing *United States v. Miller*, 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939)). The government further argues that, in any case, this issue is now moot.

Upon review of the threshold jurisdictional question, we note that defendant's past pretrial conditions no longer present a live controversy; nor is this a matter that, as to defendant, is capable of repetition yet evading review. We therefore hold that the constitutionality of the pretrial firearms condition is now a moot issue. *Cf. Inmates of the Lincoln Intake & Detention Facility v. Boosalis*, 705 F.2d 1021, 1023–24 (8th Cir.1983) (in § 1983 case, in which class certification had been denied, pretrial detainee's claims challenging conditions of confinement no longer satisfied the Article III case or controversy requirement because the plaintiff had been released and there was no evidence that, as to him, the alleged violations were capable of repetition yet evading review).

### 18 U.S.C. § 3143(a)

▆ Lastly, we consider defendant's appeal of the district court's decision to detain defendant pending sentencing pursuant to 18 U.S.C. § 3143(a). Defendant argues that the district court committed clear error when it denied him bond pending sentencing upon finding that defendant had failed to prove, by clear and convincing evidence, that he was not a danger to the community.

In response, the government first notes that 18 U.S.C. § 3143(a)(1) provides that a judicial officer "shall order" a person who has been found guilty of an offense and is awaiting imposition or execution of sentence (except where no prison term is recommended under the guidelines) be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pending sentencing. In the present case, the district court observed "I have here a situation where a defendant who has been convicted of a crime is reported to have made serious threats with respect [to] law enforcement people and other people. I have a defendant who hasn't even taken the stand to deny those and at least say 'well, gosh, I was only fooling, Judge.'" Transcript of bond hearing (Aug. 8, 1994) at 60. Thus, the government argues that the district court did not commit clear error when it concluded that defendant failed to meet his burden of demonstrating, by clear and convincing evidence, that he was not a danger to the community. The government also again argues that this issue, in addition to being meritless, is moot.

Upon review of the mootness issue, we note that defendant has already been sen-

---

date on which defendant purportedly signed the monthly report, and May 19, 1989, is the date on which the monthly report was filed with the bankruptcy court. Notably, there is no overlap between the dates alleged in Counts I and II and the date on which the monthly bankruptcy report was filed.

tenced and is currently serving that sentence. Moreover, he is statutorily entitled to receive credit for the time he served prior to his sentencing. 18 U.S.C. § 3585(b). We therefore hold that there is no longer a live controversy, nor is this a matter that, as to defendant, is capable of repetition yet evading review. Accordingly, we hold that the presentencing detention issue is now moot.

For the foregoing reasons, the judgment of the district court is affirmed.